NOT DESIGNATED FOR PUBLICATION

No. 112,731

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DARWIN FERGUSON,
*Appellee*.


MEMORANDUM OPINION

Appeal from Ellsworth District Court; RON SVATY, judge. Opinion on remand filed March 23, 2018. Remanded with directions.

*Joe Shepack*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellee.


Before GREEN, P.J., STANDRIDGE and POWELL, JJ.


PER CURIAM: On February 13, 2018, the Kansas Supreme Court summarily vacated our decision and remanded this case to us for reconsideration in light of *State v. Nece*, 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*), and *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016) (*Nece I*).


A brief review of the stipulated facts and the procedural history is helpful. On July 27, 2014, Kansas Highway Patrol Trooper Brent Van Buren observed a motorcycle traveling at a speed of 79 miles per hour in a 55-mile-per-hour speed zone. Trooper Van Buren activated his patrol vehicle's emergency lights and Ferguson, the motorcycle

1

driver, eventually brought his motorcycle to a stop. When Trooper Van Buren approached Ferguson, he observed Ferguson's eyes to be bloodshot and watery, he smelled the odor of alcohol on Ferguson's breath, and he noticed Ferguson was unsteady on his feet. Ferguson agreed to take a field sobriety test, which he failed. After being provided the required advisories, Ferguson agreed to take a preliminary breath test, which he also failed. Ferguson then admitted to consuming "a few beers" prior to driving. At this point, Trooper Van Buren arrested Ferguson and transported him to Ellsworth County Medical Center. Once there, Trooper Van Buren read the implied consent advisory, commonly referred to as the DC-70 form, to Ferguson and then requested Ferguson submit to a blood draw for purposes of determining his blood alcohol content. A lab report from the Kansas Bureau of Investigation reflects that Ferguson's blood alcohol content at the time of the test was .17 grams per milliliters of blood.

The State charged Ferguson with one count each of driving under the influence (DUI) of alcohol and driving in excess of the maximum speed limit. Ferguson filed a motion to suppress the evidence, specifically challenging the results of the blood draw taken under Kansas implied consent protocol. A hearing on the motion was held. The district court ultimately granted Ferguson's motion to suppress, finding Ferguson's consent to the blood draw was not valid under the Fourth Amendment to the United States Constitution. The State filed an interlocutory appeal challenging the district court's decision to suppress the blood-test results. In a memorandum decision dated August 21, 2015, we reversed the district court's order of suppression and remanded the matter to the district court for further proceedings. *State v. Ferguson*, No. 112,731, 2015 WL 5036946 (Kan. App. 2015) (unpublished opinion).

On September 8, 2015, Ferguson filed a petition for review of our decision. While the petition for review was pending, the Kansas Supreme Court issued its decisions in *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*), and *Nece I*. In *Ryce I*, the Kansas Supreme Court held that K.S.A. 2014 Supp. 8-1025, which imposes criminal

2

penalties upon a motorist for refusing to submit to any method of blood-alcohol testing, is facially unconstitutional because the statute criminalizes a defendant's right to withdraw his or her consent to a warrantless search and the statute is not narrowly tailored to serve a compelling state interest. 303 Kan. 899, Syl. ¶¶ 9, 12. In *Nece I*, our Supreme Court held that a driver's consent to a breath test premised on the threat of criminal prosecution for test refusal "was unduly coerced because, contrary to the informed consent advisory, the State could not have constitutionally imposed criminal penalties if [the driver] had refused to submit to breath-alcohol testing. Thus, because [the] consent was premised on the inaccurate information in the advisory, [the] consent was involuntary." 303 Kan. at 889.

After *Ryce I* and *Nece I* were decided, the United States Supreme Court issued its decision in *Birchfield v. North Dakota*, 579 U.S. __,136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). In *Birchfield*, the United States Supreme Court held that the Fourth Amendment permits warrantless *breath* tests incident to arrests for drunk driving but not warrantless *blood* tests. 136 S. Ct. at 2184-85. The Court also determined that motorists may not be criminally punished for refusing to submit to a warrantless blood draw. 136 S. Ct. at 2185-86. Noting that it was not addressing the constitutionality of various state implied consent laws, the Court ultimately held:

> "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. . . .
>
> "It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.
>
> ". . . [W]e conclude that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense. [Citations omitted.]" 136 S. Ct. at 2185-86.

Although our Supreme Court granted the State's motion for rehearing in both *Ryce I* and *Nece I* after *Birchfield*, the Kansas Supreme Court essentially reaffirmed its holding in each case. See *State v. Ryce*, 306 Kan. 682, 699-700, 396 P.3d 711 (2017) (*Ryce II*), and *Nece II*, 306 Kan. at 681. With regard to the petition for review still pending in this case, the Kansas Supreme Court granted the petition, summarily vacated our decision, and then remanded it to us for reconsideration in light of *Nece II* and *Nece I*.

To begin our analysis of the issue presented on remand, we must start with the fact that Ferguson submitted to a warrantless blood test in this case. Under *Birchfield*, the Fourth Amendment does not permit a warrantless blood test incident to a lawful arrest for drunk driving absent another exception to the warrant requirement. 136 S. Ct. at 2184-85. So the blood draw here cannot be deemed constitutional as a search incident to arrest. But here, Ferguson consented to the blood draw. Consent to a warrantless search is an exception distinct and separate from a warrantless search incident to a lawful arrest. With regard to consent, however, the *Birchfield* Court held that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." 136 S. Ct. at 2185-86; see *Nece II*, 306 Kan. at 681; *Nece I*, 303 Kan. at 889. To determine whether Ferguson's consent was voluntary, we must determine whether Ferguson was advised by Trooper Van Buren before the blood test that refusing to consent to the blood test is a crime if the driver has a prior conviction of DUI or a prior test refusal. For the reasons stated below, we find there are insufficient facts in the record to make this determination.

K.S.A. 2014 Supp. 8-1025, which became effective on July 1, 2012, criminalizes the refusal to submit to any breath, blood, or urine alcohol test under certain circumstances, including when the driver has a prior conviction of DUI or a prior test refusal. K.S.A. 2014 Supp. 8-1001(k)(4), which also became effective on July 1, 2012, states that, before a breath, blood, or urine alcohol test can be administered to a driver, a law enforcement officer must give oral and written notice that if the driver refuses to

4

submit to the requested test, the person may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which can carry criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence under certain circumstances.

Although referred to in the stipulated facts, the DC-70 form used by Trooper Van Buren to provide the implied consent advisory to Ferguson is not part of the record. Notably, the DC-70 form in effect at the time of Ferguson's arrest advised drivers that, under K.S.A. 2014 Supp. 8-1025, it is a crime to refuse to submit to a blood, breath, or urine test for alcohol content under certain circumstances. But we cannot assume from a silent record that Ferguson was given this advisory. This is especially true given the blank DC-70 form attached to Ferguson's brief on appeal, which reflects it was last revised in July 2008, before the Legislature enacted K.S.A. 2014 Supp. 8-1025 making it a crime to refuse to submit to alcohol content testing. Since the form was last revised four years before the Legislature criminalized refusing to submit to breath, blood, and alcohol testing, the DC-70 form attached to Ferguson's brief does not include an advisory to drivers that refusal is a separate crime under certain circumstances.

In the wake of *Birchfield*, *Nece II*, and *Nece I*—all of which were decided while the petition for review was pending in this case—the voluntariness of Ferguson's consent to the blood draw here turns on the implied consent advisory given by Trooper Van Buren to Ferguson. If Trooper Van Buren advised Ferguson that refusing to submit to the blood test was a separate and distinct crime under certain circumstances, Ferguson's consent must be deemed involuntarily coerced. If, however, Trooper Van Buren did not advise Ferguson that refusing to submit to the blood test was a separate and distinct crime and there are no other facts to render the consent coerced, then it appears Ferguson's consent to the blood draw could be deemed voluntary. Because the record does not include the DC-70 or other evidence to establish the content of the implied consent advisory provided by Trooper Van Buren to Ferguson, we must remand the matter to the

district court to make findings of fact and conclusions of law on this issue for the record. Because the district court did not have the benefit of the *Birchfield*, *Nece II*, and *Nece I* decisions and, because we do not have the benefit of the district court's findings of fact and conclusions of law under the new legal standard, we will remand with instructions to determine whether Ferguson's consent to the blood draw was voluntary or coerced and, if coerced, whether any exception to suppression of the evidence obtained applies in this case.

Remanded with directions.